**THIS DISPOSITION
IS CITABLE
AS PRECEDENT OF
THE TTAB**

Hearing:                                      Mailed:
31 March 2005                                 13 July 2005
                                              AD

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Isabella Fiore, LLC
_____

Serial No. 76445173
_____

Melissa A. Weiland, Esq. of Accessory Design Holdings, Inc., for Isabella Fiore, LLC.[1]

Sonya B. Stevens, Trademark Examining Attorney, Law Office 108 (Andrew Lawrence, Managing Attorney).[2]
_____

Before Quinn, Walters, and Drost, Administrative Trademark Judges.

Opinion by Drost, Administrative Trademark Judge:

On August 29, 2002, Isabella Fiore, LLC (applicant) applied to register on the Principal Register the mark FIORE, in standard character form, for:

---

[1] On March 28, 2005, applicant's original attorney Valerie du Laney of Miller, Nash LLP, filed a Withdrawal of Attorney to temporarily withdraw from the case to permit "applicant's in-house counsel, Melissa Weiland, to handle the appeal, including the oral argument."  Ms. Weiland argued the appeal.

[2] Dahlia George argued the appeal for the Office.

All purpose sport bags, all-purpose athletic bags, animal carriers, animal harnesses, animal leashes, athletic bags, attache cases, baby backpacks, baby carriers worn on the body, backpacks, beach bags, billfolds, book bags, boston bags, briefbags, briefcases, briefcase-type portfolios, business card cases, business cases, calling card cases, carry-on bags, catalog cases, change purses, clothing for animals, clutch bags, clutch purses, coin purses, collars for pets bearing medical information, cosmetic bags sold empty, cosmetic cases sold empty, credit card cases, day packs, diaper bags, document cases, dog apparel, drawstring pouches, duffel bags, fanny packs, garment bags for travel, golf umbrellas, gym bags, handbags, hat boxes for travel, key cases, knapsacks, leashes for animals, leather shopping bags, leggings for animals, lipstick holders, luggage, luggage tags, mats and pads made of fabric for use with animal training, name card cases, non-motorized, collapsible luggage carts, overnight bags, overnight cases, parasols, pet clothing, pocketbooks, purses, satchels, school bags, shaving bags sold empty, shoe bags for travel, shoulder bags, suit bags, suitcases, toiletry cases sold empty, tote bags, train cases, travel bags, bags, trunks, umbrellas, vanity cases sold empty, waist packs, and wallets in International Class 18.[3]

The examining attorney refused to register applicant's mark on the ground that the mark is primarily merely a surname under Section 2(e)(4) of the Trademark Act. 15 U.S.C. § 1052(e)(4).

After the examining attorney made the refusal final, applicant filed a notice of appeal. An oral hearing was held on March 31, 2005.

---

[3] Serial No. 76445173. The application is based on applicant's allegation of its bona fide intent to use the mark in commerce.

Section 2(e)(4) of the Trademark Act prohibits the registration on the Principal Register of a mark that "is primarily merely a surname." In surname cases, we must determine the impact the term has or would have on the purchasing public because "it is that impact or impression which should be evaluated in determining whether or not the primary significance of a word when applied to a product is a surname significance. If it is, *and it is only that*, then it is primarily merely a surname." In re Harris-Intertype Corp., 518 F.2d 629, 186 USPQ 238, 239 (CCPA 1975), quoting, Ex parte Rivera Watch Corp., 106 USPQ 145 (Comm'r 1955) (emphasis in original).

"Among the factors to be considered in determining whether a term is primarily merely a surname are the following: (i) whether the surname is rare; (ii) whether anyone connected with applicant has the involved term as a surname; (iii) whether the term has any other recognized meaning; and (iv) whether the term has the 'look and feel' of a surname." In re United Distillers plc, 56 USPQ2d 1220, 1221 (TTAB 2000).[4]

---

[4] If the mark is depicted in stylized form, we would also consider the stylization because if it is "distinctive enough, this would cause the mark not to be perceived as primarily merely a surname." See In re Benthin Management GmbH, 37 USPQ2d 1332, 1334 (TTAB 1995). Inasmuch as applicant's mark is displayed in a typed or standard character drawing, this factor is not relevant.

Therefore, the first question we address is whether the term "Fiore" is a rare surname. Applicant "does not dispute that the word FIORE is a surname." Response to first Office action at 7. The examining attorney has submitted the results of a NEXIS search of the Finder database for the last name "Fiore." The search returned 5,193 results. The examining attorney provided 500 of these listings. Also, the examining attorney introduced 89 stories from a NEXIS publication database and ten Internet stories showing that the term "Fiore" is used as a surname. Viewing this evidence, we agree with the examining attorney's conclusion that FIORE is not a rare surname. While there is no "magic" number of entries that an examining attorney must present to demonstrate that a surname is not rare, we must keep in mind that given "the large number of different surnames in the United States, even the most common surnames would represent but small fractions of such a database." In re Gregory, 70 USPQ2d 1792, 1795 (TTAB 2004). Here, more than 5000 phone book listings from throughout the United States as well as the NEXIS and Internet stories persuade us that FIORE is not a rare surname in the United States. We add that, even if the surname "Fiore" was rare, that fact, by itself, does not indicate that the mark is not a surname within the

meaning of the Trademark Act.  In re E. Martinoni Co., 189

USPQ 589, 590 (TTAB 1975) ("The fact that 'MARTINONI' may

be a rare surname does not entitle it to treatment

different from what would be accorded to a common surname

when no other meaning for the word is shown").[5]

The second surname factor is whether anyone associated

with applicant is named "Fiore."  Applicant has maintained

throughout the prosecution that there "is no person

associated with the applicant who has the surname FIORE."

Response to first Office action at 12.  However, the fact

that "a proposed mark is not the applicant's surname, or

the surname of an officer or employee, does not tend to

establish one way or the other whether the proposed mark

would be perceived as a surname."  In re Gregory, 70 USPQ2d

1792, 1795 (TTAB 2004).[6]

---

[5] As part of its response to the examining attorney's evidence, applicant in its brief introduced evidence from the Statistical Abstract of the United States regarding the population of the United States.  The examining attorney objects to this evidence as untimely.  The population of the United States certainly seems to be a fact "not subject to reasonable dispute in that it is … capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  See also TBMP § 704.12(a) (2d ed. rev. 2004). Therefore, we take judicial notice of this fact and overrule this objection.

[6] We note that in the printouts of some of the applicant's other applications that have been made of record there is a statement that "the name 'Isabella Fiore' does not identify a living individual."  See Serial Nos. 76417432 and 76413395.

The third factor we address is whether there is another recognized meaning of the term FIORE. The examining attorney has submitted excerpts from ten English language dictionaries showing that the word "Fiore" has no identified meaning in these dictionaries.

The fourth factor is whether the term has the "look and feel" of a surname. In this case, applicant uses the term "Fiore" as part of its corporate name Isabella Fiore, LLC. This name would appear to be the name of a real or fictitious individual named Isabella Fiore. The other evidence indicates that thousands of people living in the United States have the surname "Fiore". See Gregory, 70 USPQ2d at 1796 ("We conclude that ROGAN has the look and sound of a surname. It would not be perceived as an initialism or acronym, and does not have the appearance of having been coined by combining a root element that has a readily understood meaning in its own right with either a prefix or a suffix. Rather, ROGAN appears to be a cohesive term with no meaning other than as a surname") (footnote omitted). As will be discussed later, the term "Fiore" also is an Italian word and it may be viewed as such by prospective purchasers, even if they are not able to translate the word. While we agree with the examining attorney that this term would have the "look and feel" of a

surname, we do not think this factor strongly favors the examining attorney's position.

At this point, we conclude that the examining attorney has met her initial burden of a prima facie showing that the term "Fiore" would primarily be viewed as a surname so we next look at whether applicant has rebutted the examining attorney's showing that the mark is primarily merely a surname.

Applicant has responded to the examining attorney's evidence by submitting its own evidence and arguments in favor of registrability. We can dispose of several of these arguments briefly. Applicant argues that the word "Fiore" identifies historical and current place names "including street names, villa names, an entire town in Italy (as well as Paraguay), and the famous Gothic cathedral in Florence, Santa Maria del Fiore." Brief at 9. It would hardly be surprising that a surname also identified streets, villas, or towns and such minor geographic occurrences do not demonstrate that the term is not primarily a surname. To be considered primarily merely a surname, a term does not have to be devoid of any non-surname significance. Harris-Intertype, 186 USPQ at 239 (evidence that "Harris" was the name of cities in Arizona, Kansas, Minnesota, Missouri, and Oklahoma and counties in

Georgia and Texas did not prevent the term from being considered primarily merely a surname); Gregory, 70 USPQ2d at 1796 ("Moreover, there is nothing in the record to show that any of these places are so well known that the geographic significance … would overshadow the surname significance of the term"). Similarly, applicant's argument (Brief at 10) that the term "Fiore" has historical significance because it "is associated with a number of historical people, events, and customs, including the Italian mystic and philosopher Joachim of Fiore and the classic Italian folk dance, 'Ballo del Fiore' ('Dance of the Flower')" is not persuasive. Even the term McKINLEY was held to be a surname in the United States despite its many non-surname uses and its association with an American president.

> Applicant, in turn, asserted that "McKinley" is the name of a county in New Mexico with a population of 64,000, and filed the affidavit of its corporate librarian, Katherine Christiano, who stated that in a search for uses of the word "McKinley" she found 1 airport (in Michigan), 1 bay (in the Northwest Territory), 1 hospital (in Illinois), 1 Mountain (in Alaska), 1 museum (in Ohio), 2 parks (in Pittsburg[h] and Alaska), 1 peak (in Antarctica), 1 river (in Alaska), 149 schools, and 19 cities and towns. In addition, applicant argued that "MCKINLEY" is not primarily merely a surname because it has "extraordinary historical significance." In this regard, applicant maintains:
>
> > . . . It is the name of the 25th president of the United States who was assassinated while in

8

office and was memorialized in the names of schools, streets, parks, and even a mountain, throughout the United States and its territories. In this regard, the surname McKinley is in the historical class of assassinated presidents with Lincoln and Kennedy, and memorialized as they are, and as in another president who died in office, Franklin D. Roosevelt.

In re Champion International Corp., 229 USPQ 550, 550 (TTAB 1985).

In that case, the board found that the name was not of "extraordinary historical significance," and we are even less persuaded that the term "Fiore" as the name of an Italian philosopher and as part of the name of an Italian folk dance would have more significance to purchasers in the United States than the surname of an American president.

However, we now address the more significant issue in this case. Applicant argues that "the mark FIORE has an alternative, recognized meaning: it means 'flower' in Italian." Applicant has produced "evidence that Italian is increasingly popular as a language for study and practice in the United States, such that a 'beginner word' like 'flower' would be readily ascertained by a wide variety of people." Brief at 8. The examining attorney responds by arguing that:

> Whatever meaning a term may have to the public of another country (e.g., Italy) has no bearing on the determination of the term's significance to customers in the United States…
>
> It is evidence that, in this case, the additional meaning asserted by applicant for the surname "FIORE" is that of an Italian word (i.e., "FIORE") which, while susceptible to translation into English as "flower" is nonetheless not an English term itself.
>
> Brief at 7.

The term ""Fiore"" is translated as "flower; blossom, bloom" and the English word "flower" is translated into Italian simply as "Fiore." Cassell's Italian Dictionary (1977).[7] We agree with the examining attorney's initial point that we are concerned with the meaning of the mark in the United States. In re Wickuler-Kupper-Brauerei KGaA, 221 USPQ 469, 470 n.2 (TTAB 1983) ("It is the surname significance in the United States which is determinative of the registrability issue"). However, the fact that a term is a word in the Italian language does not mean that this meaning would be unknown in the United States. Indeed, the board has previously observed that "it does not require any authority to conclude that Italian is a common, major language in the world and is spoken by many people in the United States." In re Ithaca Industries, Inc., 230 USPQ

---

[7] We take judicial notice of these translations. University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., 213 USPQ 594, 596 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

702, 704-05 (TTAB 1986). See also E. Martinoni, 189 USPQ at 590 ("[W]e take judicial notice that there are many people in the United States who speak and read Italian").

The question now is whether we can consider the meaning a surname has in a foreign language in our surname analysis. Normally, in trademark cases, we consider the translation of a foreign term in determining whether a mark is registrable. In descriptiveness cases:

> It is a well established principle of trademark law in this country that the foreign equivalent of a merely descriptive English word is no more registrable than the English word itself despite the fact that the foreign term may not be commonly known to the general public. That is, normally no distinction can be made between English terms and their foreign equivalents with respect to registrability.

In re Optica International, 196 USPQ 775, 777 (TTAB 1977). The same rule applies in genericness cases. Weiss Noodle Co. v. Golden Cracknet and Specialty Co., 290 F.2d 845, 129 USPQ 411, 413 (CCPA 1961) ("In the instant case registration of the Hungarian name for noodles, 'haluska' or its phonetic equivalent in English, whether or not hyphenated, would be contrary to law for no one can be granted the exclusive use of the name of an article, either in our native tongue or its equivalent in any foreign language"). Furthermore, in likelihood of confusion cases, the doctrine of foreign equivalents is applied to determine

if the marks are similar in meaning or connotation. Ithaca Industries, 230 USPQ at 704.

In a previous case, when the board held that PIRELLI was a surname, it relied on evidence that PIRELLI "has no ordinary meaning in the Italian language, as the Italian dictionary excerpt, made of record by the Examining Attorney, shows." In re Industrie Pirelli Societa per Azioni, 9 USPQ2d 1564, 1566 (TTAB 1988).[8] In other cases, the board considered the term's foreign language meaning before it determined that the term was primarily merely a surname in the United States. In re Picone, 221 USPQ 93, (TTAB 1984) (Dictionary showing that "Piccone" was the Italian word for "pick, pick ax" was not sufficient to overcome surname significance of the term PICONE); In re Carl Braun, Camerawerk, 124 USPQ 184 (TTAB 1960) (Despite the fact that "Braun" was the German word for "brown," the board held that "it is clear that it is applicant's surname, it is used as such, and it would be thought of and recognized as such by the average purchaser").

---

[8] In In re Etablissements Darty et Fils, 759 F.2d 15, 225 USPQ2d 652, 653 (Fed. Cir. 1985), the Federal Circuit, in affirming the board's determination that "Darty" was a surname, noted that the board found that the term did not appear in dictionaries as a French or English word and that applicant did not submit any evidence that the term has any non-surname significance.

We assume that if applicant was seeking registration for its mark FIORE for "flowers," the examining attorney would apply the doctrine of foreign equivalents and refuse registration on the ground that the mark is at least descriptive of the goods. Similarly, if the examining attorney discovered a registration for the English word "Flower" for "all purpose sports bags," we presume that the examining attorney would have applied the doctrine of foreign equivalents in considering whether there was a likelihood of confusion between the marks FIORE and FLOWER when they are used on identical goods. Similarly, we hold that whether a term is primarily merely a surname must take into consideration the meaning the term has in a foreign language. Indeed, that is the standard procedure when encountering foreign words in a trademark. For example, the term KUPPERS KOLSCH was held to be primarily merely a surname for beer because the evidence established that KUPPER was a surname and "Kolsch" was a type of beer produced in Cologne, Germany. Wickuler-Kupper-Brauerei, 221 USPQ at 470. It would be inconsistent to translate the second term and ignore the translation, if there was one, of the first term.

If the term has an established meaning, as in this case, we consider the meaning's significance in the United

States.  We note that there are limitations to the application of the doctrine of foreign equivalents. "Although words from modern languages are generally translated into English, the doctrine of foreign equivalents is not an absolute rule and should be viewed merely as a guideline.  The doctrine should be applied only when it is likely that the ordinary American purchaser would stop and translate the word into its English equivalent."  Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 73 USPQ2d 1689, 1696 (Fed. Cir. 2005) (Citations and internal quotation marks omitted).  The rule is not to be applied mechanically.  Even terms with English language meanings may still be held to be primarily merely surnames.  "[I]f there is a readily recognized meaning of the term apart from its surname significance, registration should be granted.  This does not mean, however, that all that is necessary to overcome a prima facie showing of surname significance is that the applicant uncover a dictionary entry for the term in question."  In re Nelson Souto Major Piquet, 5 USPQ2d 1367, 1367-68 (TTAB 1987).  In that case, the fact that "Piquet" was "the name of a relatively obscure card game is unlikely to be known to purchasers and is certainly not the ordinary meaning of the term."  Id. at

1368. However, if the term's dictionary definition is not obscure, it may be a significant factor in determining that the term is not primarily merely a surname. See, e.g., United Distillers, 56 USPQ2d at 1221 (Dictionary definition of "Hackler" as "one that hackles; esp.: a worker who hackles hemp, flax or broomcorn" considered in determining that HACKLER was not primarily merely a surname); Fisher Radio Corp. v. Bird Electronic Corp., 162 USPQ 265, 267 (TTAB 1969) (BIRD not primarily merely a surname).

Applying the doctrine of foreign equivalents in this case, we find that ""Fiore"" is an Italian word that is listed as the only translation of the common English word "flower." It is the type of term that potential customers would stop and translate. Italian, as a major, modern language, is not an obscure language such as Old English. In re Winegard Co., 162 USPQ 261, 262-63 (TTAB 1969) ("Applicant indicates that 'WINEGARD' is the equivalent of 'Winegeard,' an Old English term meaning a vineyard. We are of the opinion that few of the prospective purchasers of applicant's goods would be aware that 'WINEGARD' is the equivalent of 'Winegeard,' if that be so"). Also, the term "Fiore" is spelled in the standard Italian dictionary form. Thus, there is no question of whether the term would be recognized in its current form as the Italian word for

"flower." Picone, 221 USPQ at 95 (Italian word "Piccone" did not establish that "Picone" was not a surname); In re Pickett Hotel Co., 229 USPQ 760, 761 (TTAB 1986) ("'Pickett' and 'picket' are not interchangeable in appearance or meaning"). Furthermore, this is not a case where the surname's non-surname meaning in Italian is obscure. In re Advanced Spine Fixation Systems, Inc., 25 USPQ2d 1367, 1369 (TTAB 1992) ("Many surnames of foreign origin have obscure meanings which lose out to the primary surname significance").

In surname cases, it has long been held that if "the mark has well known meanings as a word in the language and the purchasing public, upon seeing it on the goods, may not attribute surname significance to it, it is not primarily a surname. 'King,' Cotton,' and 'Boatman' fall in this category." Rivera Watch Corp., 106 USPQ at 149. See also Ex parte Gemex Co., 111 USPQ 443, 443 (Comm'r Pat. 1956) ("'WELLINGTON' is a surname; it is a geographical name, being the national capital of New Zealand and the name of a number of towns in the United States; it is a baptismal name; and it is the name of one of Great Britain's most important dukedoms. There is no way of knowing what the impact on the purchasing public is likely to be upon seeing "WELLINGTON" watch bracelets and straps, or with what, if

16

anything, purchasers are likely to associate the mark"). Indeed, the board considered the fact that CALISTO was the variant spelling of the Greek mythological nymph "Callisto" in determining that the term was not primarily merely a surname. In re Monotype Corp., 14 USPQ2d 1070, 1071 (TTAB 1989).[9]

When we consider the common meaning of the term "Fiore" in Italian, we conclude that it does have a meaning that detracts from the surname significance of the term. The term does not have such an obvious "look and feel" of a surname that potential purchasers would overlook its Italian language meaning. Our case law holds that if we have doubts about whether the term is a surname, we resolve them in favor of the applicant and for publication of the mark. United Distillers, 56 USPQ2d at 1222; In re S. Oliver Bernd Freier GmbH & Co., 20 USPQ2d 1878, 1879 (TTAB 1991). Therefore, we resolve our doubt in applicant's favor.

Decision: The refusal to register applicant's mark on the ground that it is primarily merely a surname is reversed.

---

[9] Even when a term had no recognized dictionary meaning, the board considered an applicant's argument that the term SAVA, "is an acronym for 'Securing America's Valuable Assets.'" In re Sava Research Corp., 32 USPQ2d 1380, 1381 (TTAB 1994).