**Application of HARRIS–INTERTYPE CORPORATION.**

**Patent Appeal No. 75–501.**

United States Court of Customs and Patent Appeals.

June 30, 1975.

Howard L. Weinshenker, J. Herman Yount, Jr., Yount, Tarolli & Weinshenker, Cleveland, Ohio, attorneys of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, LANE, and MILLER, Judges, and ALMOND, Senior Judge.

MILLER, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (one member dissenting), 182 USPQ 635 (1974), adhered to on reconsideration, affirming the examiner's ex parte refusal to register "HARRIS" for "electronic equipment, namely—video display terminals for editing and proofing text preparatory to typesetting," application serial No. 397,896, filed July 21, 1971, claiming first use in interstate commerce at least as early as June 6, 1970. We affirm.

Registration was refused by the examiner on the ground that "HARRIS" is primarily merely a surname, citing subsection 2(e)(3), 15 U.S.C. § 1052(e)(3).[1]

■ Appellant does not rely on subsection 2(f).[2] by arguing that "HARRIS" has become distinctive of its goods. Instead, it argues that "HARRIS" has such well-known "secondary meanings" (i. e. non-surname denotations) that it is not primarily merely a surname. It properly points out that the burden is on the PTO to prove that "HARRIS" is primarily merely a surname and argues that even

---

1. The provision reads as follows:

No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

. . . .

(e) Consists of a mark which . . . (3) is primarily merely a surname.

2. Subsection 2(f) provides:

(f) Except as expressly excluded in paragraphs (a), (b), (c), and (d) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration.

if telephone directory listings relied upon by the examiner were to be regarded as a prima facie showing that "HARRIS" is primarily merely a surname, appellant's evidence of "secondary meanings" rebuts such showing.

■ The meaning of "primarily merely a surname" was considered by this court in *In re Kahan & Weisz Jewelry Mfg. Corp.*, 508 F.2d 831 (1975), where we said it was necessary to determine "the primary significance of the mark to the purchasing public" and adopted the following reasoning from *Ex parte Rivera Watch Corp.*, 106 USPQ 145, 149 (Com'r Pats.1955): [3]

A trademark is a trademark only if it is used in trade. When it is used in trade it must have some impact upon the purchasing public, and it is that impact or impression which should be evaluated in determining whether or not the primary significance of a word when applied to a product is a surname significance. If it is, *and it is only that*, then it is primarily merely a surname.

Thus, the determining factor is the primary (not secondary) significance to the public or "the purchasing public." 1 J. McCarthy, *Trademarks and Unfair Competition* 476 (1973).

■ In the *Kahan & Weisz* case, *supra*, we noted that the only evidence relied on by the examiner as a basis for refusal to register "DUCHARME" on the principal register was its listing only six times (in three different forms) in the Manhattan telephone directory for New York City, and we found that such evidence was not determinative of the "primarily merely a surname" issue.

Here, the examiner showed that the Cleveland, Ohio, telephone directory for 1971–72 contains some 1100 listings of "Harris" and that the Maryland suburban section of the Washington, D. C., metropolitan area telephone directory for 1972–73 has some 800 listings of "Harris." Such evidence of an unusually large number of listings of a surname is in sharp contrast to that in *Kahan & Weisz, supra,* and prima facie establishes that "HARRIS" is primarily merely a surname.

Appellant points to what it refers to as "a multiplicity of secondary meanings" evidenced by listings in various recognized dictionaries and directories, and the *Rand McNally Commercial Atlas and Marketing Guide* (1974): Harris Teachers College; a "city" in Arizona, Kansas, Minnesota, Missouri, and Oklahoma;[4] Harris Lake; Harris Point and Harris Bay; Harris County (in Georgia and Texas); Harris Place; Harris Street; Harris Avenue; harris hawk; harris's sparrow; harris's woodpecker; and harris-buck. However, we are persuaded that such uses are either "somewhat obscure," as described by the board, or represent "the normal naming of a place or other item after an individual," as pointed out by the examiner, or both. It is also significant that, except for the name of a "city," the word "Harris" is coupled with the place or thing so named. Appellant cites the listing of "Harris" under "Common English Given Names" in *Webster's Seventh New Collegiate Dictionary*. However, the listing is accompanied by the notation that it is derived from a surname, and we agree with the board that a *mere* listing in a dictionary does not indicate a general acceptance thereof as a given name.[5]

**3.** Assistant Commissioner Leeds traced the legislative history of the language "primarily merely a surname," and concluded that the legislative history "is just about as confused as the decisional law," pointing out that "[t]here did not . . . appear to be agreement as to the effect of including the word 'merely'" and suggesting that there was "probably" an intent "to permit an applicant to register his own *full* name." (Emphasis supplied.)

**4.** Harris, Arizona, is shown by the reference to have zero population; Harris, Kansas, is shown with a population of 41; Harris, Minnesota, 559; Harris, Missouri, 174; and Harris, Oklahoma, 100.

**5.** Appellant also argues that "HARRIS" identifies a heavy, handwoven woolen fabric. However, the dictionary references cited by appellant before the board show "Harris Tweed" as

Appellant cites *Ex parte Rivera Watch Corp., supra, Ex parte Omaha Cold Storage Co.,* 111 USPQ 189 (Com'r Pats. 1956), *Ex parte Gemex Co.,* 111 USPQ 443 (Com'r Pats.1956), and *In re Ferrara Candy Co.,* 166 USPQ 157 (TTAB 1970). In these cases it was held, respectively, that "RIVERA," "DOUGLAS," "WELLINGTON," and "FERRARA" were not primarily merely surnames. We note that in its reply brief before the board appellant pointed out that in the District of Columbia telephone directory for 1971–72 there were in excess of 150 listings of "DOUGLAS," 3 of "FERRARA," and 5 of "WELLINGTON"; and in the Cleveland, Ohio, telephone directory for 1972 there were 175 listings of "DOUGLAS," 19 of "FERRARA," and 14 of "WELLINGTON." Thus, it appears that the listings of "FERRARA" and "WELLINGTON" are comparatively insignificant, as was the case with "DUCHARME" in *Kahan & Weisz, supra,* whereas the listings of "DOUGLAS" are comparatively numerous.

In the *Rivera* case, the applicant contended that "Rivera" was not primarily merely a surname, particularly since it is a Spanish word meaning a small stream or rivulet. The Assistant Commissioner simply stated:

> it is not believed that the average member of the purchasing public would, upon seeing "Rivera" used as a trademark on watches, be likely to think of its being a surname . . .

In the *Gemex Co.* case, the same Assistant Commissioner recognized that "[t]here is no way of knowing what the impact on the purchasing public is likely to be upon seeing 'WELLINGTON' watch bracelets and straps," and decided in favor of the applicant, pointing out that there was no reasoning to indicate why the examiner thought the surname

the identification; and there is nothing in the record to support appellant's argument that

significance would be greater than the geographical significance (e. g. the capital of New Zealand). In *Ferrara,* the board said:

> The record before us indicates only that one person bears that surname, viz. Nello V. Ferrara one of the partners of Ferrara Candy Co. On the other hand, Ferrara is a well-known Italian City. On the basis of the record before us we cannot conclude that "FERRARA" is better known as an Italian surname than as a geographical name.

Obviously such cases, where each decision rested on a judgmental evaluation of the record, have little precedential value before this court. The Assistant Commissioner's decision in *Omaha Cold Storage Co., supra,* was premised in part on a finding that "[DOUGLAS] undoubtedly is a name which identifies applicant's products and distinguishes them from those of others," a point not argued by appellant here as previously noted.

Appellant cites the registration of "HARRIS" (to other owners) on the principal register without reliance on subsection 2(f), as shown by registration Nos. 743,358 (January 8, 1963) and 888,-113 (March 24, 1970). We do not know what evidence was before the PTO when the applications were considered, so the citations have no precedential value. See also *Automobile Club of Mich.* v. *Commissioner of Int. Rev.,* 230 F.2d 585 (6th Cir. 1956), aff'd, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957).

In view of the foregoing and on the basis of the record before us, we hold that appellant has not rebutted the prima facie showing that "HARRIS" is primarily merely a surname.

The decision of the board is *affirmed.*

*Affirmed.*

the public has come to use "Harris" alone as the identifier of the fabric.