This Opinion Is Citable
as Precedent of the
TTAB

**Hearing:**
February 4, 2004

Paper No. 14
**Mailed:**
May 12, 2004

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Gregory
_____

Serial No. 76277664
_____

Paul J. Vincenti and Stacey T. Kelly of Vincenti & Vincenti, P.C. for Rogan S. Gregory.

Robert Clark, Trademark Examining Attorney, Law Office 108 (David Shallant, Managing Attorney).
_____

Before Hohein, Holtzman and Rogers, Administrative Trademark Judges.

Opinion by Rogers, Administrative Trademark Judge:

Rogan S. Gregory (an individual) has applied to register ROGAN as a mark for goods identified as "bracelets, rings, chains and pendants" in International Class 14, "leather handbags and wallets, fabric handbags" in International Class 18, and "pants, shirts, footwear" in International Class 25. The application is based on applicant's stated use of ROGAN as a mark in commerce since March 2000, such date being applicable to all classes.

The examining attorney has refused registration under Section 2(e)(4) of the Trademark Act, 15 U.S.C. §1052(e)(4), on the ground that ROGAN is primarily merely a surname. The second office action alerted applicant to the possibility of registering a surname as a mark under Section 2(f) of the Trademark Act, 15 U.S.C. §1052(f), or on the Supplemental Register. Applicant did not attempt to amend the application, either to seek registration under Section 2(f) or on the Supplemental Register. When the refusal of registration was then made final, applicant appealed. Applicant and the examining attorney filed briefs. Applicant's counsel and the examining attorney also appeared at an oral hearing.[1] We affirm the refusal of registration.

As a preliminary matter, we note the examining attorney's submission, with his brief, of photocopies of pages from what appear to be certain dictionaries, with an implicit request that we take judicial notice of these items. However, neither the photocopied pages nor the examining attorney's brief specifies the dictionaries from which the copies were made. Because this made it

---

[1] Examining attorney Jane C. Kang issued the first and second office actions, which included all evidence introduced by the Office during examination. Examining attorney Robert Clark issued the final refusal and brief, and argued the appeal.

difficult, if not impossible, for the applicant to discern the source of these materials, we deny the examining attorney's request that we take judicial notice.

The examining attorney's contributions to the record in this case include evidence that a search of a computerized database of telephone listings by the examining attorney returned 1,087 residential listings of individuals with the surname ROGAN (a printout of approximately 25 percent of the retrieved listings was included, showing listings throughout the United States); 15 article excerpts from the NEXIS database, each of which refers to an individual with the surname ROGAN (the examining attorney's search in the database for ROGAN reportedly retrieved 19,552 articles including the term); a printout of the first 10 "hits" or web site links from a search of the Internet for web pages with the term ROGAN (utilizing the Google search engine); printouts of approximately a dozen web pages featuring information on individuals with the surname ROGAN, and a genealogy web page (http://genforum.genealogy.com/rogan/) featuring links to messages posted by numerous individuals regarding the name ROGAN in their family histories (e.g., "Rogans in Maine," "Thomas Carr Rogan III from Chicago, was my father," and "Re: adoption of Caroline Rogan").

The applicant's contributions to the record include a declaration from applicant attesting to the facts that ROGAN is his first name, not his surname, and that it is not the surname of anyone connected with the design, manufacture or production of ROGAN products; a declaration of applicant's counsel Stacey T. Kelly, used to introduce searches from the website www.hamrick.com/names.html, illustrating the geographic distribution of the surnames ROGAN, HACKLER, KELLY and SMITH in the United States; a web page showing the results of an "atlas query" that lists various place names (Rogan in the Ukraine; Rogana in Tennessee; Rogans Hill in Australia; and Roganville in Texas); two web pages featuring recipes for an Indian dish named "rogan josh" (described as "one of the classic Mogul dishes,"[2] it may be prepared with lamb or beef and is reported to translate as "red meat"); and one web page featuring a variation on rogan josh listed as "chicken rogan."

The USPTO has the burden of establishing a prima facie case that a term is primarily merely a surname. In re Etablissements Darty et Fils, 759 F.2d 15, 225 USPQ 652,

---

[2] We take judicial notice of the following: "**Mogul**, *n*. **1**. one of the Mongol conquerors of India who established an empire that lasted from 1526 to 1857. **2**. one of their descendants. …" The Random House College Dictionary 858 (rev. ed. 1982).

653 (Fed. Cir. 1985). Moreover, "[t]he question of whether a word sought to be registered is primarily merely a surname within the meaning of the statute can only be resolved on a case by case basis," taking into account a number of various factual considerations. Id.

There are five accepted factors to be considered in the analysis:

(1) Is the word a common or rarely used surname?

(2) Does anyone connected with the applicant have that surname?

(3) Does the word have meaning other than as a surname?

(4) Does the word look and sound like a surname?

(5) Is the word presented in use in a stylized form distinctive enough to create a separate non-surname impression?

In re Benthin Management GmbH, 37 USPQ2d 1332, 1333-34 (TTAB 1995) (Examining attorney's refusal to register BENTHIN reversed, because it was a rare surname, did not look and sound like a surname, and was set forth in a highly stylized oval design).

In this case, there is no stylization or design involved; applicant seeks merely to register ROGAN in typed form. Thus, the fifth factor is not a factor in this case

and we examine the record in light of the first four factors.

As to the first factor, applicant argues that the existence of nearly 1100 listings of ROGAN in telephone directories in the United States is evidence that the surname is rare, because this is a very small percentage of the asserted 90 million listings covered by the database drawing these directories together, and because applicant's searches of the hamrick.com website show that individuals with the ROGAN surname are scattered in small numbers around the United States.  In addition, applicant argues that the Board previously has found HACKLER to be a rare surname despite the presence of a greater number of listings in the Phonedisc database than were found by the examining attorney's search for ROGAN in this case (1,295 listings for HACKLER out of what was then approximately 80 million total listings, compared to 1,087 listings for ROGAN out of what are now reported to be approximately 90 million total listings).[3]  See In re United Distillers plc, 56 USPQ2d 1220 (TTAB 2000).

---

[3] We accept for the purpose of the comparison, applicant's contention that the ReferenceUSA database used by the examining attorney in this case formerly was known as the Phonedisc database.

We do not view the *United Distillers* decision as setting a per se benchmark stating that unless there are many more than 1300 listings in a database of telephone listings a surname must be found to be a rare. First, we note that the decision is somewhat equivocal on the rareness factor, for it initially states that HACKLER "is a rare surname" but later refers to "this *relatively* rare surname" (emphasis added). More importantly, the decision does not rely solely on the database figures to reach a conclusion on the rareness factor. The *United Distillers* decision also relied on the absence of any significant number of listings for the HACKLER surname from telephone directories for certain major metropolitan areas (the borough of Manhattan in New York City and the Washington, DC/Northern Virginia areas). *United Distillers*, 56 USPQ2d at 1221. Similarly, in the *Benthin* decision, the conclusion regarding rareness was based not only on a low number of database listings (slightly over 100) but also on the absolute absence of listings from the Boston, Manhattan and Philadelphia directories. *Benthin*, 37 USPQ2d at 1333.

We conclude that the question whether a surname is or is not rare is not to be determined solely by comparing the number of listings of the name to the total number of listings in a vast computerized database. Given the large

number of different surnames in the United States, even the most common surnames would represent but small fractions of such a database.  Another issue to be considered, in assessing how rarely is a name used, is the media attention or publicity accorded public personalities with the name. A surname rarely appearing in birth records may nonetheless appear more routinely in news reports, articles and the like, so as to be broadly exposed to the general public.

In the case at hand, the record reveals that the (now former) Director of the United States Patent and Trademark Office is James Rogan.  Moreover, the record reveals that Mr. Rogan was the majority leader of the California State Assembly before being elected to represent a U.S. House district in Southern California; that he received press attention for his role as an impeachment manager during the impeachment trial of former President Clinton; and that he subsequently received additional press attention for his role as a candidate for re-election in what was reported to be, at that time, the most expensive race ever for a seat in the U.S. House of Representatives.  In addition, the record reveals that a Salt Lake City councilman is named Tom Rogan.  We think it is fair to conclude that large numbers of individuals in the Southern California and Salt Lake City areas would be exposed to the names of these

elected officials, whether during an election campaign, in a polling place, or in news reports on government activities.

Outside of politics, the record reveals that Wilber Rogan is enshrined in the National Baseball Hall of Fame; that the author Barbara Rogan has written seven books published in 35 editions and eight languages and is an instructor at Hofstra University on Long Island; that Seth Rogan is a comedian and actor who has made many public appearances;[4] that Joe Rogan is an actor and comedian who has appeared on the television program "News Radio"; and that Joe Rogan is the host of an NBC television show entitled "Fear Factor."[5]

The existence of these individuals with the surname ROGAN leads us to conclude that the name may be rare when viewed in terms of frequency of use as a surname in the general population, but not at all rare when viewed as a

---

[4] A web page "bio" lists his name as Seth Rogen (with an "e"), but the web page address lists the name as Rogan (with an "a") as does one of the NEXIS article excerpts, which refers to Seth Rogan in a list of celebrities. Thus, we conclude that the Rogen spelling is a typographical error. Were it clear that Rogen is the correct spelling, we would, of course, not consider this item of evidence in regard to the rareness factor. Discounting this item would not, however, change our decision.

[5] It may be that Joe Rogan from "News Radio" and Joe Rogan from "Fear Factor" is the same individual. We cannot tell from the record.

name repeated in the media and in terms of public perception. Accordingly, we conclude that ROGAN is not a rare surname. We are not persuaded otherwise by applicant's evidence showing that KELLY and SMITH are much more common surnames than HACKLER or ROGAN.

As to the second factor, applicant asserts that ROGAN is his first name and not the surname of any individual involved in design, manufacture or production of applicant's products. On the other hand, applicant does not claim that he promotes recognition of the ROGAN name as a first name. While the examining attorney has conceded that this factor favors applicant, we find the factor neutral. In a situation wherein an individual applicant, or an officer or employee, for example, of a corporate applicant, actually has the surname proposed as a mark, this would certainly weigh against the applicant. *Benthin*, 37 USPQ2d at 1333 (even though Benthin was ultimately found not primarily merely a surname, the second factor weighed against the applicant because Benthin was the surname of applicant's Managing Director). In contrast, that a proposed mark is not the applicant's surname, or the surname of an officer or employee, does not tend to establish one way or the other whether the proposed mark would be perceived as a surname.

10

Applicant and the examining attorney obviously differ on the question of whether ROGAN has significance other than as a surname.  The examining attorney asserts that ROGAN has no meaning other than as a surname.  Applicant relies on the fact that ROGAN is his first name; on the Internet "atlas query" and his contention that the results of this query show that ROGAN is the root of certain place names; and on the evidence that there is an Indian dish known as "rogan josh."

Applicant has not put anything in the record to show how commonly ROGAN is used as a first name rather than a surname, while we have a good deal of evidence of its use as a surname.  Cf. In Re Harris-Intertype Corporation, 518 F.2d 629, 186 USPQ 238, 240 (CCPA 1975) (dictionary listing of HARRIS as given name noted that it is derived from a surname).  As to the results of the atlas query, we agree with the examining attorney that the apparent existence of a place named "Rogan" in the Ukraine and "Rogans Hill" in Australia is not evidence of whether consumers in the United States will perceive ROGAN as having a non-surname meaning.  In re Sava Research Corp., 32 USPQ2d 1380, 1381 (TTAB 1994).  On the other hand, while the existence of places named "Rogana" and "Roganville" in, respectively, Tennessee and Texas, can be considered as evidence because

these uses are in the United States, the existence of Roganville may actually support the conclusion that "Rogan" would be viewed as a surname by individuals in that place (or familiar with it). *Harris-Intertype*, 186 USPQ at 239 (CCPA 1975) (cities, counties, streets, lakes and other things may derive their names from an individual's name).[6] Moreover, there is nothing in the record to show that any of these places are so well known that the geographic significance of, for example, Roganville as a place name would overshadow the surname significance of the term ROGAN. Cf. In re Colt Industries Operating Corp., 195 USPQ 75 (TTAB 1977) (significance of FAIRBANKS as a well-known city in Alaska at least equal to its surname significance).

We also accord little weight to the existence of the Indian dish "rogan josh." There is nothing in the record to indicate whether the dish is actually available at Indian restaurants in the United States and, if so, how widely. The web site setting forth a recipe for "chicken rogan" appears to be a web site based in the United Kingdom (www.miketaylor.org.uk/misc/recipes/rogan.html), and also is unsupported by evidence that diners or cooks in the United States would be familiar with it.

---

[6] While Roganville has the look of a place name created by coupling "Rogan" and the common suffix "ville," Rogana is

We conclude that the clearly dominant meaning of ROGAN is as a surname and would at most have but some obscure association with minor localities or Indian food. This factor therefore favors the examining attorney's refusal of registration.

We come, then, to the last factor to be discussed, i.e., whether ROGAN has the look and sound of a surname. When a term does not have the look and sound of a surname, it clearly aids the applicant. On the other hand, when it does look and sound like a surname, such a finding merely tends to reinforce a conclusion that the term's primary significance is as a surname.

We conclude that ROGAN has the look and sound of a surname. It would not be perceived as an initialism or acronym, *see Sava, supra,* and does not have the appearance of having been coined by combining a root element that has a readily understood meaning in its own right with either a prefix or a suffix. Rather, ROGAN appears to be a cohesive term with no meaning other than as a surname. In fact, the evidence regarding the number of individuals having ROGAN as a surname, including those who, as politicians or celebrities, have received more attention than the average

---

different. It does not have the look of a place name made by coupling "Rogan" with the letter "a."

13

individual named ROGAN, also supports the finding ROGAN looks and sounds like a surname.

Balancing the various factors, we find that ROGAN is not a rarely used surname, has the look and sound of a surname, and its primary significance as a surname is not outweighed by other meanings which may be ascribed to the term. See *Harris-Intertype, supra*, and In re Hamilton Pharmaceuticals Ltd., 27 USPQ2d 1939 (TTAB 1993).

Decision: The refusal of registration under Section 2(e)(4), on the ground that ROGAN is primarily merely a surname, is affirmed.