**THIS OPINION IS A PRECEDENT
OF THE T.T.A.B.**

Mailed:
October 17, 2007

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re J. J. Yeley
_____

Serial No. 78489186
_____

Karl S. Sawyer, Jr. of Kennedy Covington Lobell & Hickman, LLP for J. J. Yeley.

Naakwama Ankrah, Trademark Examining Attorney, Law Office 109 (Dan Vavonese, Managing Attorney).
_____

Before Quinn, Walsh and Bergsman, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

This appeal from the final refusal of the Trademark Examining Attorney involves Section 2(e)(4) of the Trademark Act of 1946, 15 U.S.C. §1052(e)(4), which precludes registration of a mark that is "primarily merely a surname." J. J. Yeley seeks to register his name, J. J. YELEY, in standard character form, for a wide variety of goods in Classes 6, 9, 10, 14, 16, 18, 20, 21, 24, 25, 27, and 28 (Serial No. 78489186), based on applicant's *bona fide* intent to use the mark in commerce under Section 1(b) of the Trademark Act of 1946, 15 U.S.C. §1052(b).

The statute provides that registration should be refused if the proposed mark is "primarily merely a surname." "Merely" is synonymous with "only," and "primarily" refers to "first in order" or "fundamentally." Thus, we must determine whether J. J. YELEY is fundamentally only a surname. *In re I. Lewis Cigar Mfg. Co.,* 205 F.2d 204, 98 USPQ 265, 267 (CCPA 1953). We must consider the mark as a whole and determine whether the addition of the initials "J. J." to "Yeley" results in a mark that is primarily merely a surname. It "is that impact or impression [how the mark is used] which should be evaluated in determining whether or not the primary significance of a word when applied to a product is a surname significance. If it is, *and it is only that,* then it is primarily merely a surname." *In re Harris-Intertype Corp.,* 518 F.2d 629, 186 USPQ 238, 239 (CCPA 1975), *quoting, Ex parte Rivera Watch Corp.,* 106 UPSQ 145, 149 (Comm'r 1955). In other words, we must determine the primary significance of J. J. YELEY to the purchasing public. *Michael S. Sachs Inc. v. Cordon Art B.V.,* 56 USPQ2d 1132, 1136 (TTAB 2000).

The determination of whether the primary significance of the designation at issue is that of a surname is based on the facts made of record. *In re Etablissements Darty et*

*Fils,* 759 F.2d 15, 225 USPQ 652, 653 (Fed. Cir. 1985). The Examining Attorney has the initial burden to make a *prima facie* showing of surname significance. *Id.* If the Examining Attorney makes that showing, then we must weigh all of the evidence from the examining attorney and the applicant to determine ultimately whether the mark is primarily merely a surname. *In re Sava Research Corp.,* 32 USPQ2d 1380, 1381 (TTAB 1994). If there is any doubt, we must resolve the doubt in favor of applicant. *In re Benthin Management GmbH,* 37 USPQ2d 1332, 1334 (TTAB 1995).

In *Benthin*, the Board identified five factors, four of which are relevant here, to consider in determining whether a mark is primarily merely a surname:

1. The degree of the surname's "rareness";

2. Whether anyone connected with the applicant has the involved term as a surname;

3. Whether the mark has any recognized meaning other than as a surname; and,

4. Whether the mark has the "look and sound" of a surname.

*Id.* Because J. J. YELEY is in standard character form, we need not consider the fifth *Benthin* factor here, that is, whether the manner in which the mark is displayed might negate any surname significance.

1.  Rareness

The Examining Attorney submitted the results from a nationwide LexisNexis phone directory with 147 "Yeley" listings, and the first ten listings (from what appears to be 178 total listings) for "Yeley" from the website *Ancestry.com* purportedly derived from the 1930 United States census.[1]  "It is the examiner's position that the 147 listings for YELEY in the LEXIS/NEXIS database and the various online databases of record, overwhelmingly establishes the significance of YELEY as a surname to the American purchasing public . . . Therefore, . . . the frequency with which YELEY is used as a surname is not rare in this case."[2]  While the Examining Attorney did not provide any information regarding the size of the LEXIS/NEXIS database, it is a nationwide database, and these were the only Yeley listings found.  As a result, on this record, we conclude that Yeley is a rare surname.  In reaching this conclusion, we rely on the fact that only 147 examples of the Yeley surname were located from a directory

---

[1] The Examining Attorney also submitted a web page for the Yeley surname genealogy search from the *Surname Web* website (surnameweb.org).  This web page provides information regarding how to obtain information about the Yeley surname, but no information regarding the Yeley surname.  Accordingly, we have not given this exhibit any consideration in our determination of whether J. J. YELEY is primarily merely a surname.
[2] Examining Attorney's Appeal Brief, pp. 4-5.

purportedly of the entire United States. *See In re Sava Research Corp., supra; In re Garan Inc.,* 3 USPQ2d 1537, 1540 (TTAB 1987).

2.  Applicant's surname use and meaning other than as a surname.

Applicant's name is J. J. Yeley, and this is the mark sought to be registered. Accordingly, the Examining Attorney contends that applicant has conceded that J. J. YELEY "is a full name and as such, the name 'Yeley' is a surname of the applicant";[3] that "[t]he addition of an initial or initials to a surname does not diminish the surname significance of the term, and may, in fact, emphasize the primary surname significance of the term"[4]; and that there is no evidence that "Yeley" has any meaning other than as a surname.[5]

On the other hand, applicant argues that the designation J. J. YELEY has significance as identifying applicant himself, a well-known NASCAR race driver and, therefore, the designation at issue is recognized as a full name rather than just a surname.[6] Applicant submitted a declaration in which he attested to the following:

1.  "NASCAR racing has grown phenomenally over recent years";

---

[3] Examining Attorney Appeal Brief, p. 4.
[4] Examining Attorney Appeal Brief, p. 6.
[5] Examining Attorney Appeal Brief, p. 6.
[6] Applicant's Brief, p. 6.

2.  Applicant markets his products identified by the J. J. YELEY mark primarily to NASCAR and other automobile racing fans;

3.  In 2004 and 2005, applicant participated in over 45 races;

4.  The races were televised nationally;

5.  The televised races had over 4.5 million viewers;

6.  Applicant was featured in a nationally televised advertising campaign for MBNA from February to May 2005;

7.  NASCAR racing fans are among the most brand-conscious and brand-loyal of all consumer groups;

8.  "To varying extents, virtually every driver and race team participating in NASCAR automobile racing currently makes a concerted effort to market and sell merchandise, all of which directly competes with Applicant's merchandise"; and,

9.  "As a result of all of the foregoing, commercial usage of the mark and the Applicant's popularity among NASCAR racing fans, the mark has come to be widely recognized by NASCAR racing fans and, more generally, among consumers of companies which sponsor NASCAR racing events and racing cars, and among the general public."[7]

It is common knowledge that stock car racing has become one of the most popular spectator sports in the United States and that as such, many of its participating drivers have become well-known personalities to fans. Thus, based on applicant's declaration, we are convinced

---

[7] Declaration of J. J. Yeley attached to applicant's October 25, 2005 Response.

6

that the primary significance of J. J. YELEY is the race car driver, and this primary significance outweighs the surname significance.[8]  In other words, applicant's initials, "J. J." do not reinforce the surname "Yeley"; rather, the mark in its entirety conveys the impression that it is a personal name.  *See Michael S. Sachs Inc. v. Cordon Art B.V., supra.*

3.   Look and sound of a surname.

Lastly, we consider whether J. J. YELEY has the "look and sound" of a surname.  As to this factor, the Examining Attorney argues that "consumers are accustomed to seeing and hearing the term YELEY in the context of a surname. Thus, the term YELEY has the 'look and sound' of a surname

---

[8] During the prosecution of the application, applicant claimed that the mark J. J. YELEY had acquired distinctiveness. Applicant supported its claim of acquired distinctiveness with J. J. Yeley's declaration.  The Examining Attorney did not accept applicant's claim of acquired distinctiveness, and applicant did not appeal that refusal.  Although the declaration was submitted to demonstrate that the mark J. J. YELEY had acquired distinctiveness, we are not determining the issue of acquired distinctiveness.  Rather, we are analyzing the primary significance of J. J. YELEY; specifically, whether the addition of the initials reinforces surname significance or points to a specific individual.  The declaration provides sufficient evidence to persuade us that the public has been exposed to the person J. J. YELEY, as opposed to the J. J. YELEY mark, and that because the products will be marketed to NASCAR fans, those potential consumers will recognize J. J. YELEY as a race car driver.  We find that the evidence in the declaration is sufficient to establish that the primary significance of J. J. YELEY refers to a specific individual, and it is not primarily merely a surname.  In other words, the initials do not reinforce surname significance.

simply because consumers are accustomed to seeing and hearing this term as a surname and it is the surname of the applicant."[9]

This is a decidedly subjective factor based on whether prospective consumers would perceive J. J. YELEY to be a personal name or a surname. A surname is a "family name" as opposed to a given name.[10] The fact that the designation at issue is a combination of applicant's initials and surname (which he claims constitute his personal name) tends to show that consumers would perceive J. J. YELEY as indicating a personal name, not primarily merely a surname. *See Michael S. Sachs Inc. v. Cordon Art B.V., supra* ("The mark M.C. ESCHER would no more be perceived as primarily merely a surname than the personal names P.T. Barnum, T.S. Eliot, O.J. Simpson, I.M. Pei and Y.A. Tittle"). In this regard, we note that a segment of American society uses euphonic or pleasant-sounding initials rather than given names.[11] Examples include: e. e. cummings, H. L. Mencken,

---

[9] Examining Attorney Brief, p. 6.

[10] *Dictionary.com Unabridged (v 1.1)* based on the Random House Unabridged Dictionary (2006). The Board may take judicial notice of dictionary definitions. *University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co.,* 213 USPQ 594 (TTAB 1982), *aff'd,* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

[11] The Little Giant Encyclopedia of Names, p. 20 (1999; What's In A Name? . . . Everything You Wanted To Know, pp. 75-76 (1989). The Board may take judicial notice of dictionaries and standard reference works. *B.V.D. Licensing Corp. v. Body Action Design Inc.,* 846 F.2d 727, 6 UPSQ2d 1719, 1721 (Fed. Cir. 1988)

W. C. Fields, P. T. Barnum, H. R. Haldeman, H. L. Hunt, J. P. Morgan, J. C. Penney, J. D. Salinger, E. G. Marshall, K. D. Lang, C. C. Sabathia, and P. J. Carlesimo.

In sum, based on the record in this case, we find that "Yeley" is a rare surname and that the designation at issue, J. J. YELEY, has significance as the race car driver and has the "look and sound" of a personal name, not a surname.  Accordingly, we conclude that J. J. YELEY is not primarily merely a surname.  Furthermore, as noted above, we must resolve any doubt in favor of applicant.  *In re Benthin Management GmbH, supra.*

In reaching this decision we are mindful of the decision of the predecessor to our primary reviewing court that the use of a first name initial followed by a surname reinforces, rather than diminishes, the surname significance of a term.  *In re I. Lewis Cigar Mfg. Co., supra* (S. SEIDENBERG & CO.'S is primarily merely a surname).  *See also, In re Sears, Roebuck & Co.,* 87 USPQ 400 (Comr. Pats. 1950), *aff'd,* 204 F.2d 32, 96 USPQ 360 (CA DC 1953) (J.C. HIGGINS is primarily merely a surname). These decisions are based on the premise that if the surname is unduly emphasized or otherwise constitutes the

---

(dictionary definitions and encyclopedias); *Sprague Electric Co. Electrical Utilities Co.,* 209 USPQ 88, 95 n.3 (TTAB 1980)

only significant part of the mark, the addition of initials will not change the character of the mark as being primarily merely a surname. *In re Sears, Roebuck & Co.*, 96 UPSQ at 362. *See also Ex parte Dallioux*, 83 USPQ 262, 263 (Comr. Pats. 1949) (ANDRE DALLIOUX would not be registrable if the surname were unduly emphasized or otherwise constituted the only significant part of the mark).[12]

In *Sears, Roebuck*, the district court found that the mark J C HIGGINS "has as its foundation only the surname HIGGINS" (which the court found was not a rare surname) and it is "clearly dominated thereby." *In re Sears, Roebuck & Co.*, 96 USPQ at 361. The finding of fact was that the primary significance of the mark was as a surname.[13] In *Lewis Cigar Mfg.*, the CCPA held that under the facts presented therein, the addition of a single initial to the SEIDENBERG surname was not sufficient to remove the mark

---

(standard reference works). Moreover, we take judicial notice that some persons use initials in lieu of a given name.

[12] The Commissioner specifically noted that the prohibition against registering the name of an individual is no longer the law. 96 USPQ at 263.

[13] The appeals court noted that the district court ruled as a matter of law, without regard to the evidence offered to show that purchasers and customers considered the initials significant. It further noted that the evidence proffered by applicant would not persuade the court to reverse the decision. *In re Sears, Roebuck & Co.*, 96 UPSQ at 361 n.3. However, the appellate court did not rule as a matter of law that initials added to a surname cannot alter the significance of a surname for purposes of determining whether that mark is primarily merely a surname, or may be primarily something else (*i*.e., a personal name).

from surname status.  *In re I. Lewis Cigar Mfg. Co.,* 98

USPQ 267.  In neither case was there any discussion of

evidence indicating that the names J C Higgins or S.

Seidenberg identified any particular individuals and,

therefore, under the facts of those cases, the addition of

initials to a surname served only to reinforce the surname

significance of the marks at issue.

However, there is no *per se* rule that the addition of

an initial(s) to a surname means that the mark is

automatically primarily merely a surname.  It depends on

the principal or ordinary significance of the term, and

that is a question of fact.

> The question of whether or not a term
> is primarily merely a surname within
> the meaning of Section 2(e)(3) [now
> Section 2(e)(4)] depends on what is
> perceived by purchasers to be its
> primary significance.  [Internal
> citation omitted].  To be more
> specific, if the principal or ordinary
> significance of the term is that of a
> surname, it is prohibited from
> registration.  On the other hand, if
> there is a readily recognized meaning
> of the term apart from trademark
> significance, registration should be
> granted.

*In re Piquet,* 5 USPQ2d 1367 (TTAB 1987).  *See also, In re*

*Etablissements Darty et Fils,* 225 USPQ at 653 ("with

respect to issues of fact, no precedential value can be

given to the quantum of evidence apparently accepted in a

prior case"); *In re Taverniti, SARL,* 225 USPQ 1263, 1264 (TTAB 1985) ("we must decide the issue presented herein by considering all of the relevant facts and circumstances peculiar to this case"); TMEP §1211 ("Each case must be decided on its own facts, based upon the evidence in the record").  In this application, the record convinces us that the primary significance of J. J. YELEY is a personal name and the identity of the race car driver.

Decision:  The refusal to register applicant's mark on the ground that it is primarily merely a surname is reversed.