This Opinion is a
Precedent of the TTAB

Mailed: March 8, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

____

Trademark Trial and Appeal Board

____

*In re MCDM Productions, LLC*

____

Serial No. 90328783

____

Stephen McArthur and Thomas Dietrich of The McArthur Law Firm, PC,
     for MCDM Productions, LLC.

Andrew Leaser, Trademark Examining Attorney, Law Office 117,
     Cynthia Tripi, Managing Attorney.

____

Before Cataldo, Kuczma, and Dunn,
     Administrative Trademark Judges.

Opinion by Dunn, Administrative Trademark Judge:

MCDM Productions, LLC (Applicant) seeks registration on the Principal Register

of STRONGHOLDS & FOLLOWERS (standard characters) for "Role playing game

equipment in the nature of game book manuals," in International Class 16.[1]

____

[1] Application Serial No. 90328783 filed November 18, 2020 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), based upon Applicant's claim of first use of the mark anywhere since at least as early as February 9, 2018 and first use in commerce since at least as early as June 19, 2019.

 Citations to the examination record are to the downloadable .pdf version of the documents in the USPTO's online Trademark Status and Document Retrieval system (TSDR). Citations to TTABVUE throughout the decision are to the Board's public online database that contains the appeal file, available on the USPTO website, www.USPTO.gov. The first number

The Trademark Examining Attorney refused registration under Sections 1, 2 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052 and 1127, on the ground that the subject matter sought to be registered fails to function as trademark, because the proposed mark is the title of a single work.

When the refusal was made final, Applicant requested reconsideration. After the Examining Attorney denied the request for reconsideration, Applicant appealed to this Board. The appeal is fully briefed. We affirm the refusal to register.

**Title of a Single Work Refusal**

The title of a single creative work, such as a book, is not considered to be a trademark, and is therefore unregistrable. Trademark Act Sections 1, 2, and 45, 15 U.S.C. §§ 1051, 1052, and 1127; *see Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1378 (Fed. Cir. 2002) ("This court's precedent … clearly holds that the title of a single book cannot serve as a source identifier.") (citing *In re Cooper*, 254 F.2d 611, 117 USPQ 396, 400 (CCPA 1958) ("As Teeny-Big is no more than the name of a book, its only name, it is not a trademark under the statute, Section 2.")). "[H]owever arbitrary, novel or nondescriptive of contents the name of a book – its title – may be, it nevertheless describes the book." *In re Cooper*, 254 F.2d 611, 117 USPQ 396, 400 (CCPA 1958). *Accord In re Arnold*, 105 USPQ2d 1953, 1954 (TTAB 2013)

_____

represents the docket number in the TTABVUE electronic case file and the second represents the page number(s).

("The title of a work is, in essence, the name assigned to it by its author; as such it describes the work but in no way indicates the source of the work.").[2]

Over the years, the refusal on the ground that the title of a single work does not function as a trademark has been applied to works beyond titles of books to other single creative works with content that does not change. *In re Innovative Cos.*, 88 USPQ2d 1095, 1102 (TTAB 2008) ("Single creative works include works in which the content does not change … As such, the title of book, play, or phonograph records or similar recording is not registrable as a trademark.") (*quoting* TMEP § 1202.08(a)).). *Accord Mattel Inc. v. Brainy Baby Co.*, 101 USPQ2d 1140, 1143 (TTAB 2011) ("The featured program on both the VHS tape and the DVD are the same creative work, and the addition of the minor enhancements in the DVD does not transform this single work into a series"); *In re Posthuma*, 45 USPQ2d 2011, 2014 (TTAB 1998) ("[T]he essential story of the play remains, by and large, intact. Whatever the changes made to this live theater production, it still remains a single work"). The title of a single creative work is not registrable on either the Principal or Supplemental Register. *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1378 (Fed. Cir. 2002); *Innovative Cos.*, 88 USPQ2d at 1102.

---

[2] In addition to finding that the title of a single work does not act as an indicator of source, the Court of Customs and Patent Appeals found in *Cooper* that allowing registration of a title of a single work may create obstacles to the entry of copyrighted material into the public domain. "Unlike a copyright that has a limited term, a trademark can endure for as long as the trademark is used. Therefore, once copyright protection ends, and the work falls in the public domain, others must have the right to call the work by its name." *Cooper*, 117 USPQ at 400.

## Analysis

Applicant identifies its goods as "role playing game equipment in the nature of game book manuals." The goods plainly are books, a word that appears in the identification of goods. Applicant does not contend that it uses the term STRONGHOLDS & FOLLOWERS to identify a series of books. Applicant states plainly that it "has applied to register its mark for 'Role playing game equipment in the nature of game book manuals,' and **not** for a series of books."[3] Accordingly, because Applicant's goods are a single work, we address whether the term STRONGHOLDS & FOLLOWERS is the title of the work.

Applicant describes the specimen of use shown below, which accompanied the application, as the "STRONGHOLDS & FOLLOWERS mark used on role playing game manual:"

---

[3] Applicant's brief, 4 TTABVUE 3 (**emphasis** in original). In contrast to the title of a single work, "The name for a series, at least while it is still being published, has a trademark function in indicating that each book of the series comes from the same source as the others. The name of the series is not descriptive of any one book and each book has its individual name or title. A series name is comparable to the title of a periodical publication such as a magazine or newspaper." *In re Cooper*, 117 USPQ at 400.



*Figure 1 Applicant's initial specimen of use[4]*

The term STRONGHOLDS & FOLLOWERS appears on the front of the role playing game manual, in the place where book titles usually appear. The record includes dozens of online image search results from the Examining Attorney's search for "role playing book manuals" (representative samples shown below), the same sort of goods identified in the application:[5]

---

[4] November 8, 2020 Application, Specimen.

[5] March 8, 2021 Office Action TSDR 5-24.





[6] March 8, 2021 Office Action TSDR 6.

[7] March 8, 2021 Office Action TSDR 9.

[8]

In each image of a role playing game manual, the publisher prominently displays the title on the cover in the same way that Applicant prominently displays STRONGHOLDS & FOLLOWERS on Applicant's specimen of use.[9] *See Cooper*, 117 USPQ at 397 ("The specimen filed with the application appears to be the jacket of a book, the front cover portion bearing at the top the words Teeny-Big, underneath which is a picture and under the picture the statement 'By R. K. Cooper with Illustrations by Dorothy Ashbrook Hobson.'"); *In re Hal Leonard Publ'g Corp.*, 15 USPQ2d 1574, 1576 (TTAB 1990) ("The only question, when there are a variety of phrases on the cover, is which would be perceived as the title. In this case, we have no doubt that the answer is INSTANT KEYBOARD. … [T]his phrase appears at the

---

[8] March 8, 2021 Office Action TSDR 24.

[9] We reject Applicant's contention in its brief (10 TTABVUE 10) that the Examining Attorney erred by basing the refusal on "the fact that the mark appears on the cover of Applicant's game manual." The refusal is based on STRONGHOLDS & FOLLOWERS being the title of Applicant's role playing game manual, and consideration of the specimen is integral to the determination of registrability. *See* TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1202.08(f) (July 2021) ("The issue of whether a proposed mark is the title of a single creative work usually is tied to use of the mark, as evidenced by the specimen.").

top of the cover, and is followed by the words BY GARY MEISNER, in obvious reference to the author."). There is no other wording on Applicant's role playing game manual that might put into question what is the title. We find that the role playing game manual images provide corroboration that STRONGHOLDS & FOLLOWERS would be perceived as the title of Applicant's role playing game manual.

Applicant's website shows that the purchase option for "STRONGHOLDS & FOLLOWERS BOOKS" offers a single title in print and electronic (pdf.) formats:



*Figure 2 Applicant's STRONGHOLDS & FOLLOWERS online purchase page[10]*

---

[10] March 8, 2021 Office Action TSDR 36-37 (image divided in record).

Selling a book in different formats does not preclude a finding that the title names a single work. *See Mattel v. Brainy Baby*, 101 USPQ2d at 1144 ("the LAUGH & LEARN program is promoted in respondent's catalogs as a single work that is available in both VHS and DVD formats"); *In re Appleby*, 159 USPQ 126, 127 n.1 (TTAB 1968) ("The fact that applicant's recording is also available in the Spanish language is of no particular significance since "HYPNO-SMOKE," as used thereon, performs the same function.").

Finally, the record includes four online reviews of Applicant's role playing game manual (excerpted below), all of which identify the work being reviewed as a book with the title STRONGHOLDS & FOLLOWERS (**emphasis** added):

Friendly Bard Reviews: Strongholds & Followers by MCDM Productions
Strongholds & Followers was funded by a wildly successful Kickstarter campaign that launched in early February 2018. In December, backers received the **PDF** in its finished form (with acknowledgement that typos would be fixed before the first printing). It is also available for purchase from the MDCM [sic] online store.
After getting the chance to read it **cover to cover**, here's my review! …
Strongholds & Followers is a supplement for 5th edition Dungeons & Dragons. …These sections have a lot of content all on their own, and at times they seem to strain against the **title** Strongholds & Followers. …
https://friendlybard.com/2019/01/friendly-bard-reviews-strongholds-followers-by-mcdm-productions/ [11]

Dungeons & Possums, Review of MCDM's Strongholds & Followers for SE
I am a dude who is all about this sort of thing, and I am a dude who is all about the old school D&D flavor, and when you mix those two elements together, you end up with a dude who is going to look through some old school lenses when he reads this newfangled castle **book**. … As is my habit, we begin with a look at the art and the layout of the **book**. … I have to offer my sincere congrats to the team that worked on this **book** with very lofty expectations from a zillion Kickstarter backers and Youtube viewers, for a first foray into a big mechanical supplement, this is a pretty good debut.…

---

[11] March 19, 2021 Response TSDR 101-103.

https://dungeonsandpossums.com/2018/12/review-mcdms-strongholds-and-followers/[12]

Nerdarchy Review: Strongholds and Followers from MCDM
The Strongholds & Followers **book** starts by breaking down the differences between buying a stronghold and awarding a stronghold. The **book** shows you the pros and cons of building new vs. rebuilding from ruins. … Matt Colville points out – and I urge reading this section of the **book** – that a stronghold will unbalance the game if you don't take precautions as the DM so please bear that in mind.
https://nerdarchy.com/strongholds-and-followers-from-mcdm/[13]

NorseDM: My Thoughts On MCDM's Strongholds and Followers, Part I
If you're not familiar with the **book**, Strongholds & Followers began as a Kickstarter by Matt Colville and his newly-formed company MCDM Productions. The goal of the Kickstarter was twofold: 1) fund a **book** surrounding rules for creating, managing, and upgrading strongholds, and 2) raise enough money for MCDM to start their very own D&D 5e stream. …
Is this a review?
Yes and no. … So I'd like to take the time to showcase this **book** and my thoughts as I read through it. https://justicearman.com/2019/07/14/my-thoughts-on-mcdms-strongholds-and-followers-part-I[14]

This record evidence supports a finding that the term STRONGHOLDS & FOLLOWERS is the title of a single work, namely Applicant's "role playing game equipment in the nature of game book manuals."

Applicant in its brief contests this finding on three bases – contending that STRONGHOLDS & FOLLOWERS is "more than merely the title of its role-playing game" and is recognized as a mark (4 TTABVUE 11-15); that inconsistency in examination has resulted in registrations of the titles of other role playing game manuals and so its own application also should be allowed (4 TTABVUE 23-24); and

---

[12] March 19, 2021 Response TSDR 109-112.

[13] March 19, 2021 Response TSDR 115.

[14] March 19, 2021 Response TSDR 118.

that its role playing game manual is an activity book and as such, it is not subject to the refusal (4 TTABVUE 15-22).

The first contention is unsupported because the record shows STRONGHOLDS & FOLLOWERS only used as the title of Applicant's role playing game manual. Applicant posits that its Kickstarter® crowdfunding campaign, in which investors received stickers, t-shirts, and copies of the STRONGHOLDS & FOLLOWERS RPG manual created an association between the STRONGHOLDS & FOLLOWERS role playing game manual and Applicant such that STRONGHOLDS & FOLLOWERS is perceived as a mark.[15] However, the only crowdfunding use of STRONGHOLDS & FOLLOWERS in the record is as the title of the role playing game manual, and this use as a title is highlighted by the nearby exhortation "Buy the Book!":

---

[15] 4 TTABVUE 12-14.



*Figure 3 Excerpt from Applicant's crowdfunding page[16]*

The reference to "Strongholds & Streaming" on the crowdfunding page is not the

same as, and creates no association with, "Strongholds & Followers." Similarly, the

---

[16] March 19, 2021 Response TSDR 93.

The term "5th Edition Supplement" which appears on Applicant's crowdfunding page does not refer to a series by Applicant but is a shorthand reference to STRONGHOLDS & FOLLOWERS as a supplement to the 5th Edition of the Dungeons and Dragons role playing game. The record includes three articles about Dungeons and Dragons as the "most famous" of all role playing game games, and "orally constructed and conjured in the imagination with the help of rule books, reference guides, charts, multifaceted dice and maps." March 19, 2021 Response TSDR 44-62 generally, quotes at 45 and 53. A "supplement" is defined as "something that is added to something else in order to make it complete." *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/supplement. Accessed 6 Feb. 2022. The third-party reviews and Wiki page for Applicant, excerpted above, also refer to STRONGHOLDS & FOLLOWERS as a supplement to the 5th Edition of the Dungeons and Dragons game.

stickers and t-shirt incentives to which Applicant refers do not bear the term STRONGHOLDS & FOLLOWERS, and so are not evidence that consumers perceive STRONGHOLDS & FOLLOWERS as anything but the title of the role playing game manual:



*Figure 4 Excerpt showing Applicant's crowdfunding stickers[17]*



*Figure 5 Excerpt showing Applicant's crowdfunding t-shirt[18]*

Excerpts from Applicant's crowdfunding campaign made of record also do not refer to STRONGHOLDS & FOLLOWERS as anything but the title of the role playing game manual, describing it as "a hardcover book," "This is a book!," "We're printing a book …," and "More than just a set of rules and charts, this book also describes a

---

[17] March 19, 2021 Response TSDR 94.

[18] March 19, 2021 Response TSDR 96.

style of play that assumes your character becomes more interested in influencing the world around them."[19]



*Figure 6 Excerpt from Applicant's crowdfunding page*

Similarly, the record evidence Applicant describes (4 TTABVUE 14) as "unsolicited media coverage" fails to demonstrate that consumers perceive

---

[19] March 19, 2021 Response TSDR 93. We regard the statement in the crowdfunding campaign "The core release is 128 pages, hardcover, but the content and page count increase with each stretch goal!" not as an indication that there were multiple books of varying length, but as a prepublication inducement to donate so the one book would have more and better content.

STRONGHOLDS & FOLLOWERS as a source indicator rather than the title of Applicant's role playing game manual. The media coverage comprises the book reviews excerpted above, and a Wiki webpage about Applicant. The reviews use STRONGHOLDS & FOLLOWERS as the title of Applicant's role playing game manual. The third-party MCDM Wiki webpage states that it hosts "over 200 pages relating to MCDM products," "Here you can read about all things MCDM," including "STRONGHOLDS & FOLLOWERS, a 5th Edition Dungeons & Dragons supplement created by MCDM."[20] This too shows that STRONGHOLDS & FOLLOWERS is the title of Applicant's role playing game manual. In sum, we find no evidence that STRONGHOLDS & FOLLOWERS is an indicator of the source of role playing game manuals rather than the title of one role playing game manual.[21]

---

[20] March 19, 2021 Response TSDR 106.

[21] We reject Applicant's contention (4 TTABVUE 11-12), citing the non-precedential decision *In re King Prod., Inc.*, Serial No. 76703458 (TTAB November 19, 2014), that an analysis of acquired distinctiveness is relevant here. The Federal Circuit has foreclosed the argument that the title of a single work is registrable if it has acquired distinctiveness. *Herbko*, 64 USPQ2d at 1378 ("the publication of a single book cannot create, as a matter of law, an association between the book's title (the alleged mark) and the source of the book (the publisher)."). We considered all record evidence in coming to the determination that STRONGHOLDS & FOLLOWERS is the title of the manual, including the evidence that Applicant offers as proof that STRONGHOLDS & FOLLOWERS is an indicator of source. However, once we so find that Applicant seeks to register the title of its single work, the mark is unregistrable on either the Principal or Supplemental Register. *Herbko*, 64 USPQ2d at 1378; *Innovative Cos.,* 88 USPQ2d at 1102.

Applicant's citation to this 2014 non-precedential decision, in which the panel acknowledged the prevailing statutory basis for the refusal but applied a different statutory basis, does not persuade us that we should do the same here. *See In re Cooper*, 117 USPQ at 398 ("It has so long been settled that the title of a book cannot be registered as a trademark, because it is not a trademark, that there has been some question in our minds as to whether the concurring decisions below should not be summarily affirmed with mere citation of some of the principal authorities."). *See also* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 101.03 (2021) ("a decision or order designated as not precedential is not binding upon the Board, but may be cited for whatever persuasive value it might have.").

We turn to Applicant's argument that the USPTO has allowed the titles of similar role playing game manuals to register. The record includes nine third-party registrations of marks for role playing game manuals, the same goods at issue here. Applicant submitted copies of the specimens of use from the registration files showing the marks used as the titles of the role playing game manuals.[22] *See* Registration No. 6036308 JOURNEY TO THE TREE OF SORROWS, Registration No. 6028243 MOTHERSHIP, Registration No. 5166187 7TH SEA, Registration No. 5364820 CASTLES & CRUSADES, Registration No. 5239801 HIGH COLONIES, Registration No. 5014596 WILDERLANDS, Registration No. 5083068 CRYPTOMANCER, Registration No. 5062382 POLARIS, Registration No. 4967779 IMPERIUM.

Frustrating to Applicant as perceived inconsistency in examination may be, this oft-heard argument is notably unsuccessful and this case is no exception. *See In re Nett Designs*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ("The Board must decide each case on its own merits"); *In re Cooper*, 117 USPQ at 401 ("[T]he decision of this case in accordance with sound law is not governed by possibly erroneous past decisions by the Patent [and Trademark] Office"). *See also In re Ala. Tourism Dep't*, 2020 USPQ2d 10485, at*11 (TTAB 2020) (rejecting Applicant's consistency argument, "The Examining Attorney's obligation was to determine the registrability of the applied-for mark … He properly determined that the mark was unregistrable under the statute, and neither he nor we have any obligation 'to

---

[22] March 19, 2021 Response TSDR 126-151. We do not include Registration No. 5359402 LOVECRAFT COUNTRY at TSDR 136-137 because the specimen shows the mark at the top of a map that obviously is not serving solely as the title on a book cover.

reconcile his decision to deny registration here with the decision to register or allow . . . other marks'.").

Moreover, the third-party registrations and specimens Applicant made of record do not prove any inconsistency in examination. As noted above, proof that the registered term is used on a series of works is sufficient to avoid the refusal that a term is the title of a single work. The TMEP makes it clear that the identification of goods "need not reflect that the applicant is using the title on a series of works (either written or recorded). It is sufficient that the record contains the evidence of a series." TMEP §1202.08(e). We do not know whether each Registrant used the registered term as the title for a series of works, which would make the registration consistent with precedent and examination guidelines. *See, e.g.*, *In re Harris-Intertype Corp.*, 518 F.2d 629, 186 USPQ 238 (CCPA 1975) ("We do not know what evidence was before the PTO when the applications were considered, so the citations have no precedential value.") (citation omitted); *In re Cooper*, 117 USPQ at 401 ("We refrain from mentioning any of [the third-party registrations] so as not to reflect on the validity of registrations not before us, it being clear that we have not been supplied with sufficient information to enable us to say whether the words registered were legally entitled to be considered trademarks or were mere descriptive names which could not at the same time be trademarks.").

Turning to the argument that Applicant's manual is an activity book not subject to the refusal, the TMEP provides in pertinent part (**emphasis** added):

1202.08(b) What Does Not Constitute a Single Creative Work

Generally, any creative work will not be considered a single creative work if evidence exists that it is part of a series (e.g., the work is labeled "volume 1," 'part 1," or "book 1") or is a type of work in which the content changes with each issue or performance. For example, single creative works do not include periodically issued publications, such as magazines, newsletters, comic books, comic strips, guide books, and printed classroom materials, because the content of these works changes with each issue.

A book with a second or subsequent edition in which the content changes *significantly* is not regarded as a single creative work. For example, a statement on the jacket cover that a cookbook is a "new and revised" version would indicate that it includes significant revisions. However, a new edition issued to correct typographical errors or that makes only minor changes is not considered to be a new work. Live performances by musical bands, television and radio series, and educational seminars are presumed to change with each presentation and, therefore, are not single creative works.

Computer software, computer games, coloring books, and **activity books** are not treated as single creative works.

According to the rationale expressed in the TMEP, an "activity book" is not subject to the single work title refusal because such a book changes its content with each issue. That is, if the novel *Gone With The Wind* publishes as a new edition, the content stays the same, and so an application to register *Gone With The Wind* for books would be refused as the title of a single work. In contrast, if a hypothetical *Gone With The Wind* activity book publishes as a new edition, it will contain new activities. As a result, an application to register *Gone With The Wind* for activity books would not be refused as the title of a single work.

We note Applicant's argument (4 TTABVUE 17-18) and evidence that "activity books" as currently used by third parties online include works that have instruction and exposition regarding activities that are similar to Applicant's instructions and exposition for role playing games.[23] Applicant does not contend that any of the titles

---

[23] March 19, 2021 Response TSDR 28-42. The record includes excerpts from "activity books" with names like The Feminist Activity Book, Writer's Workbook Ready, Set, Novel!, Cheerful

of the activity books Applicant placed in the record have been registered for those activity books, so there has been no test of Applicant's theory that these works, simply by virtue of being called "activity books," would not be subject to the refusal.

Applicant's goods, as identified by Applicant, are role playing game manuals. The record shows that Applicant's role playing game manual is a supplement to the role playing game Dungeons & Dragons (D&D) and instructs players in the strategy of constructing fictional strongholds and attracting fictional followers. As shown below by an excerpted page, Applicant's role playing game manual does not offer activities, but rather instruction:

in 3½ Months, Guerilla Art Kit, Boss Babes, Everything That Can Happen In A Day, Fill in the Blank: An Inspirational Sketchbook, 365: A Daily Creativity Journal. Applicant and the Examining Attorney also offer competing definitions of "activity book." March 13, 2021 Office Action TSDR 5 and March 19, 2021 Response TSDR 86.

All units raised are of the same ancestry as the owner of the keep.

Use the rules in **Creating Your Own Units** (page 235) to build the unit cards once you know which unit you've attracted.

Jess's elf cleric Lady Sariel builds a keep, attracts a unit of Regular Light Infantry, and then rolls again, getting another unit of Regular Light Infantry. She still only has one unit, but it's now Size 1d6 instead of Size 1d4.

## TRAINING

A keep means an army, and an army requires training! As you train your soldiers, you get better with your own gear, gaining the following bonuses based on the weapons or armor that you use. Choose one of the following training benefits.

You cannot gain the benefit of training from armor, shields, or weapons you are not proficient in. You can change which training you receive during an extended rest (page 15).

**Light Armor Training:** You have advantage on Dexterity checks while wearing light armor.

**Medium Armor Training:** You gain 5 feet of extra movement while wearing medium armor. This movement does not provoke attacks of opportunity.[4]

**Heavy Armor Training:** You learn to present your most heavily armored facing to your foes. Ranged attacks have disadvantage against you as crossbow bolts bounce and acid arrows splash harmlessly (some-

### UNITS RAISED BY KEEP

| D100 | UNIT TYPE |
|------|-----------|
| 01–12 | GREEN LIGHT INFANTRY |
| 13–24 | GREEN MEDIUM INFANTRY |
| 25–34 | REGULAR LIGHT INFANTRY |
| 35–44 | REGULAR MEDIUM INFANTRY |
| 45–46 | SEASONED MEDIUM INFANTRY |
| 47–48 | SEASONED HEAVY INFANTRY |
| 49–57 | GREEN LIGHT ARCHERS |
| 58–66 | GREEN MEDIUM ARCHERS |
| 67–72 | REGULAR LIGHT ARCHERS |
| 73–78 | REGULAR MEDIUM ARCHERS |
| 79–86 | REGULAR LIGHT CAVALRY |
| 87–95 | REGULAR MEDIUM CAVALRY |
| 96–100 | SEASONED LIGHT CAVALRY |

**Versatile Training:** While wielding a versatile weapon in two hands, you gain +1 AC.

### THE BARBARIAN CAMP

Barbarians are famous for keeps! In that under no circumstance would they ever build one. They are why other people build keeps! To a barbarian, the idea of putting all your men in an immobile walled jail seems ridiculous.

*Figure 7 excerpt from STRONGHOLDS & FOLLOWERS manual[24]*

Similarly, the third-party description of the STRONGHOLDS & FOLLOWERS role playing game manual in a Reddit online discussion post (submitted by Applicant) does not indicate that the role playing game manual is considered an activity book:[25]

> Strongholds and Followers is a system made by Matt Colville. It[']s a way for players to use their accumulated wealth in order to establish a "home base" that they can upgrade using different types of buildings like a wizards tower,

---

[24] March 19, 2021 Response TSDR 64.

[25] March 19, 2021 Response TSDR 90.

or a temple for clerics, in order to gain spells or develop class features and recruit followers.

We disagree with Applicant's contention (4 TTABVUE 21) that this online discussion post with its reference to a "system" shows that consumers do not regard STRONGHOLDS & FOLLOWERS as an unchanging literary work but rather as an activity book. Applicant's game manual with its description of a system to use "strongholds and followers" in a role playing game is no different from instructional works that educate children, instruct in music, or demonstrate how to quit smoking, all of which were subject to the refusal or claim that the mark was the title of a single work. *See Mattel v. Brainy Baby*, 101 USPQ2d at 1144 (LAUGH & LEARN and design not registrable as title of prerecorded videotapes, audio cassettes, digital video discs and compact discs featuring live and animated educational materials intended to develop and improve the creative and intellectual faculties of infants and children); *Hal Leonard Publ'g*, 15 USPQ2d at 1576 (INSTANT KEYBOARD not registrable as the title of music instruction books for self-learning on electronic keyboards); *Appleby*, 159 USPQ at 127 (HYPNO-SMOKE not registrable as the title of phonograph recording of psychological treatment designed to assist a person to stop smoking).

The record shows that Applicant's role playing game manuals, though intended to guide action in a game, are not activity books in which the content changes with each issue. Rather, Applicant's role playing game manuals include unchanging instruction on a method of play, and so the refusal of the title fits squarely in the line of cases finding that registration of the title of a single instructional manual is barred.

## Decision

The refusal to register STRONGHOLDS & FOLLOWERS as a mark on the ground that it is the title of a single work is affirmed.